Thank you. Thank you. The court now calls case number 24-1853, our next case for the morning, Israel Ruiz v. J.B. Pritzker. All right, and we have Ms. McDonald on behalf of the appellant this morning. You may approach the lectern. Good morning, Your Honor. Good morning. May it please the court, Ann McDonald on behalf of appellant Israel Ruiz. In 2019, Governor Pritzker signed into law the Illinois Youth Parole Law. The law provided parole opportunities to individuals who had served more than 20 years for certain crimes committed when those individuals were under the age of 21. The law was designed to align parole opportunities with advancements in science, demonstrating that the human brain does not fully mature until age 25. However, the law granted parole eligibility only to those individuals sentenced on or after its effective date in 2019. Accordingly, individuals like Mr. Ruiz, who were sentenced before the act's effective date, did not receive the same parole opportunities. There is no suggestion in the science that people's brain development differs based on the effective date of their sentence. Accordingly, Mr. Ruiz filed suit here in the district court, bringing two claims, the first under the Equal Protection Clause of the 14th Amendment, and the second pursuant to the 8th Amendment's Cruel and Unusual Punishment. The district court dismissed both claims and Mr. Ruiz appealed here. With respect to the Equal Protection Claim, Mr. Ruiz agrees that rational basis review applies to his claims. His position is that he has sufficiently alleged that there is no rational basis to discriminate between individuals based solely on sentencing dates. So he's accepting that he is not alleging some type of fundamental constitutional right or suspect classification? That's correct, Your Honor. Okay. Yeah, he agrees that it's his burden to satisfy the rational basis standard and to allege and to present factual allegations rebutting any rational basis offered by the state or anybody else, and it's our position that he has done so. The district court rejected Mr. Ruiz's claims, relying on two rational basis that the court said provided a reason for the distinction. The first, administrative burdens on the court and system, and the second, the interests of victims. With regard to burden, the court erroneously held that prospective-only application was justified by that burden on both the court and the prison systems. However, there is no court involvement with parole. The parole hearings are handled solely by the Prisoner Review Board, and as such, the rulings that the district court relied on in emphasizing the court burden, U.S. v. Speed, U.S. v. Sanders, and other sentencing-related authorities are in applicable here. Before we get to Speed, is there any concern that this should probably, this claim should have been brought not as, or under 1983, but maybe as a habeas? This claim was brought only under the Equal Protection of the 14th Amendment. Under 1983, but is there any suggestion or concern that this should have been brought? That's not been raised at all, Your Honor, by the court or by the opposing party. Are we attacking at all the sentence itself? No, Your Honor. We're merely requesting that the statute and the parole opportunity as set forth in the parole law be allowed to be retroactive. We are not addressing his sentence. With regard to the burden that the district court noted, it sort of had two parts, the court burden and then the administrative burden. It's also Mr. Ruiz's claim that the court was incorrect to rely on burden to the prison system. In light of Mr. Ruiz's well-pled allegations, that the burden on the prison system would actually be greater to incarcerate individuals for decades, perhaps unnecessarily, as opposed to the cost of a handful of parole years. Before we get to, we're kind of going into whether or not there's a legitimate government purpose, what do we do when we look at Speed in regards to the desperate treatment? I'm sorry. Speed, and how do we get around this notion that the desperate treatment is rational, beholding, or I guess, the suggestion in Speed? Yeah, so the issue in Speed related to sentencing retroactivity and the concerns there that articulated in that court and by other courts evaluating the retroactive applications of sentencing is that the burden on the court to hold resentencing hearings and to go back and have to reprocess where those hearings had already happened has been found to be a distinction is that this does not require any re-litigating, any reopening of sentencing hearings. All that this law requires is a parole hearing by the Prisoner Review Board and authorities like Montgomery v. Louisiana, the Supreme Court spoke to this and said, offering someone a parole opportunity does not increase a burden on the court system and does nothing to actually affect or burden a sentencing court. But if we accept that the government interest in sentencing versus parole might be different, what would be the irrational desperate treatment in regards to the date being selected by the legislators? Similar to in the Fair Sentencing Act argument that was raised that there will be some that will be affected and that's, I guess, using the words of Speed, there's no way around that. Well, so here I think the distinction between sentencing and parole demonstrate that there is a way around it. It didn't have to be that not everyone... The desperate treatment. Yeah, that didn't have to be the case because the parole hearings hadn't already happened like sentencing hearings had. It is very possible just to allow for this sentencing going forward and it's not a rational basis to deny parole hearings based on that distinction. With regard to the concern for victim that the court noted, Mr. Rees, as noted in our briefs, argued that the act itself takes into account consideration of victim interests and so the legislature has already built into the act a process for taking into account those victim interests and incorporating them and making sure they're heard. Moving on to the Eighth Amendment claim, the district court was also wrong to dismiss his Eighth Amendment claim. Mr. Rees alleged that it was cruel and unusual punishment to deny parole hearing in light of the new science on brain development and life expectancy in prison for individuals who are incarcerated since youth. In here, are you basically asking us to extend Miller and Montgomery? Whether it's an extension or just an application, what we're doing is saying Atkins and Montgomery recognized that how we evaluate cruel and unusual punishment is based on the norms that currently prevail and Atkins says the clearest and most reliable objective evidence that we have of the norms are what the legislature does and here we have the legislature saying we need to look at individuals who are 18 like they are 17. We need to look at individuals who have these long sentences because they might die in prison without ever being able to show they were rehabilitated. So we're just asking for that law to be applied to the science which Mr. Rees pled in his case demonstrates that it's more likely than not that he will die in prison before being able to demonstrate that he's not one of those exceptional cases where that is an appropriate determination to have made when he was only 18 years old. You know and defendants focus on this and try to distinguish cases like Montgomery by saying that Mr. Rees was 18 and not 17 and his sentence was not mandatory but it was a discretionary term of years but again Mr. Rees specifically alleged in the complaint that that term of years for him in light of how we understand sentences impact youth who are incarcerated for most of their lives effectively means that he was a man condemned to die as a youth in prison when the prevailing norms of our society demand that he be reconsidered as an adult and be able to demonstrate that he has been rehabilitated and it's for those reasons your honors that we ask the court reverse the district court's decision and hold that Mr. Rees has stated his claims under both theories. I'll reserve my time. Thank you. Thank you. Mr. Rush. Good morning your honors. Assistant Attorney General Kayla Brush on behalf of the defendants. What Rees is asking this court for is unprecedented. There's no case that supports that a statute prospectively altering parole eligibility or any prospective statute of any kind violates equal protection. There's also no case that supports that Rees's 40-year discretionary sentence is cruel and unusual punishment or otherwise violates the Eighth Amendment. Instead parole laws are a matter of legislative discretion and Rees's attempt to make this a constitutional question creates real risks of discouraging legislators from reforming or improving criminal laws in the future. Unless the court has different preference I'll start with the equal protection claim. Altering parole eligibility prospectively does not violate equal protection. Mr. Rees has not cited any case holding that applying any new statute of any kind in any field prospectively only violates equal protection. He fails to engage with the broad principles stated a hundred years ago in the Sperry case or ten years ago by this case in the Gladney case that when a legislature adopts a new rule and makes that rule, excuse me, prospective only it comports with equal protection. But the court can dispose of this case without ruling on these broad principles. It can rule more narrowly on the multiple rational bases that we've addressed in our briefing. I might focus foremost today on protecting victims settled expectations. There's a big difference between victims under the old system who when they saw the perpetrator of the murder sentenced and the judge and the prosecutor said this defendant will serve their entire sentence in there's a big difference between the settled expectations of those victims versus the new system where we have victims who are told at the time of sentencing well this sentence there will be a possibility of parole after 20 years. And the legislators when they chose to make this statute prospective only they focused on this and they focused on their concern for victims settled expectations and one of the multiple Illinois state cases upholding this prospective statute against an equal protection challenge also recognizes the importance of not destabilizing or nullifying the discretion exercise in charging and sentencing decisions. I understand that opposing counsel seeks to make an important distinction between sentencing cases and other cases that might look at more forward-looking measures. The distinction is not relevant here for equal protection purposes for the reasons that I discussed making parole available in fact is connected with destabilizing sentencing and affecting the expectations that were settled at the time of sentencing. But there's a more important point for equal protection purposes. Courts have explicitly recognized that making a statute prospective even if it's for something that only affects future events still satisfies equal protection. As far as I know this question has not arisen recently in or I'm sorry has not arisen in this circuit but Ruiz has not addressed decisions from other circuits upholding statutes that are prospective only against equal protection challenges when they affect forward-looking things like adjustments to parole eligibility, adjustments to sex offender registration requirements or good time credits. No factual development was necessary or even relevant in this case because applying the 12b6 standard taking the facts most favorably to Mr. Ruiz he simply has not stated an equal protection claim. He has not addressed the many cases from this court affirming the dismissal of equal protection claims. He has not explained how this case is different from those cases. Flying J is a very good example of a case with a thorough discussion of how rational basis review is applied at the 12b6 stage. If I can move on to the Eighth Amendment issue. I'm not sure if Ruiz's Eighth Amendment argument is clear. His reply brief seems to raise for the first time before this court a claim that his sentence itself is unconstitutional. If that's his argument it is barred by HEC and was required to be raised via habeas corpus. We didn't mention this in our brief to this court because this argument was not in Ruiz's opening brief however we did mention this point in our briefing in the district court. Leaving aside that threshold matter on the merits. Cases limiting juvenile sentencing differ from this case in three ways. They're about juveniles age 17 and under. They're about mandatory not discretionary sentences and they're about life or de facto life sentences. Any one of these reasons defeats Ruiz's Eighth Amendment claim. I might suggest that discretionary sentencing is the most straightforward way to dispose of this claim because there's no dispute that Mr. Ruiz had a sentencing hearing where the judge exercised discretion including considering Ruiz's age. And even in cases involving juveniles, even in cases involving life sentences, that kind of discretionary sentencing hearing is all that's required. I would point the court to the 2021 Jones decision from the US Supreme Court on this point. That's also in our brief. Just one final point on the Eighth Amendment claim. We also have an argument from Mr. Ruiz about arbitrariness. This is not based on any authority that applies here. He only cites death penalty cases and we agree that there is an arbitrariness principle in death penalty cases. But he ignores the cases in this arbitrariness argument. He ignores the cases that we've cited that hold that the Constitution allows different sentences, different punishments for similar conduct and that the standard that's relevant in non-death penalty cases is a due process standard that comes back to rational basis review. So I'll simply restate that this prospective statute is rationally related to several legitimate government purposes including especially protecting the settled expectations of victims. And if the court has no questions, I'll ask this court to affirm the District Court's judgment. Thank you. Thank you, Your Honors. Ms. McDonald. Thank you, Your Honor. I'd like to say that the theme of counsel's remarks are essentially what we allege was wrong in the District Court, which is to ignore the well-pledged factional allegations in plaintiff's complaint. And what Mr. Ruiz alleged with regard to equal protection that there was no rational basis. And you can share the general principles that counsel outlined for cases going back a hundred years on equal protection, but at bottom the standard requires that Mr. Ruiz but offered rational basis and the facts in his complaint demonstrate that he has. With regard to the Eighth Amendment claim in particular, counsel recited three things that he claims bar Mr. Ruiz's Eighth Amendment claim. That Mr. Ruiz was not a juvenile, that his sentence was not a de facto life sentence, and that his sentence was a discretionary one. Mr. Ruiz's factual allegations demonstrate that his brain is more like that of a juvenile and that his sentence at 40 years is more like a life sentence, is a life sentence, because the life expectancy of a person incarcerated since youth is 53 years and he was sentenced when he was 18 years old. I'm sorry, he was sentenced when he was 20. He was sentenced, I'm sorry, the crime was committed when he was 18, yes. And so he's been in prison, I'm sorry, he's been in prison since he was 18 years old. That's correct, Your Honor. And so what the legislature said here was that the individual who is a youth should have the opportunity after the sentencing hearing. And so noting, for example, that Mr. Ruiz's judge had the opportunity at sentencing to take into consideration his age does not fully address the issues that we've raised here, because what studies show us is that no judge, and what the legislature in Illinois noted explicitly in the legislative record was, that no judge looking at an 18-year-old can truly know that that person will not be rehabilitated and that we know for sure that that person cannot be a contributing member to society. And so what we are asking is for this court to use those principles from Montgomery and from Atkins to look at this science and to say, because we now understand that that judge is not able to evaluate an 18-year-old and know whether or not they should spend their whole life in prison, that that person should have the opportunity to have a parole hearing where they can demonstrate they have been rehabilitated and they can contribute to life outside of prison. So for those reasons, Your Honors, we're asking reversal and that Mr. Ruiz may continue to pursue his claims in the district court. Thank you, counsel. The court will take the case under advisement and we thank both counsel for argument this morning.